UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAIQUAN K. FALLS,

                              Plaintiff,

                v.

SGT. E. CAMPBELL, C.O. A. PULLEN, C.O.
GOODENOUGH, C.O. CARDWELL, LT.
PENNEY, and ORANGE COUNTY,

                              Defendants.

No. 17-CV-35 (KMK)

OPINION & ORDER

Appearances:

Raiquan K. Falls
Elmira, NY
*Pro se Plaintiff*

Kellie E. Lagitch, Esq.
Office of the Orange County Attorney
Goshen, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

    Plaintiff Raiquan K. Falls ("Plaintiff") brings this pro se action, pursuant to 42 U.S.C.

§ 1983, against Sergeant Campbell ("Campbell"), Correction Officer ("C.O.") A. Pullen

("Pullen"), C.O. Goodenough ("Goodenough"), C.O. Cardwell ("Cardwell"), Lieutenant Penney

("Penney"), and Orange County (collectively, "Defendants"), alleging that Defendants violated

his Eighth Amendment rights when they assaulted him, and his Fourteenth Amendment rights

when they subsequently placed him on "keeplock" status for 150 days after a series of

disciplinary hearings that he had no prior notice of and was not allowed to attend, and at which

he was prevented from presenting witnesses or evidence in his defense.  (*See generally* Second

Am. Compl. ("SAC") (Dkt. No. 42).)  Before the Court is Defendants' Partial Motion To

Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss Plaintiff's claims against Orange County for failure to sufficiently plead municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and Plaintiff's Fourteenth Amendment claim for failure to state a claim. (*See* Not. of Mot. (Dkt. No. 56).) For the reasons that follow, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's SAC, and are taken as true for the purpose of resolving the instant Motion. At the time of the events underlying this Action, Plaintiff was a convicted prisoner in the custody of Orange County Jail. (SAC 1.)[1]

On May 31, 2016, Plaintiff was sentenced to a one-year term of imprisonment at Orange County Jail ("OCJ") after being convicted of tampering with physical evidence. (*Id.* at 2.) On July 4, 2016, at approximately 6:00 p.m., Plaintiff was standing at a cell door speaking with C.O. Oriami ("Oriami") through the door's glass window. (*Id.*) Plaintiff was informing Oriami that Defendant Campbell had denied him his dinner that evening, and that Campbell told Plaintiff he would "suffer for the way [Plaintiff] acted towards his morning shift officers." (*Id.*) Plaintiff asked Oriami to order a dinner for him, but Oriami replied that Plaintiff would "need to talk to Campbell about that" and that "it would be up to him." (*Id.*) Plaintiff responded, "I should just kill myself since it seems that you two are trying to starve me to death." (*Id.*) Plaintiff also asked Oriami to contact "the Mental Health Personnel" in hopes that they could persuade Oriami or Campbell to order a dinner tray for Plaintiff. (*Id.*)

---

[1] Plaintiff's Second Amended Complaint does not include page numbers on all pages. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top of each page.

In response, Oriami "called in" to someone "over his radio" and told them an inmate was "attempting to commit suicide." (*Id.*) "Within seconds," Campbell, Pullen, Goodenough and Cardwell entered Plaintiff's cell "without any provocation." (*Id.*) Pullen allegedly "rushed in and forcefully threw his body into [Plaintiff] at full speed . . . crashing [his] back into the wall." (*Id.*) Then, Pullen "body slammed [Plaintiff] face first onto the floor," where Goodenough and Cardwell "twisted both [Plaintiff's] arms and legs . . . before securing them with their wrist and leg restraints." (*Id.*) Plaintiff alleges that Goodenough and Cardwell "overtightened the restraints" and then dropped "their knees on [Plaintiff's] back and . . . ribs." (*Id.*) Plaintiff yelled at them to "get off [his] back" and said, "I can't breathe." (*Id.*) At that point, Pullen covered Plaintiff's mouth and nose "for about 10 seconds," while Goodenough and Cardwell continued to hold their knees on Plaintiff's back and ribs. (*Id.*) Campbell, who "was only inside of [Plaintiff's] cell for about 5 seconds," "kicked [Plaintiff] in [his] face, punched [him] in [his] face and in [his] ribs a couple of times each," and then ordered Pullen, Goodenough, and Cardwell to take him to the medical center. (*Id.*) As a result of the incident, Plaintiff suffered a fractured back and "long-term and possibly permanent psychological injuries." (*Id.* at 3.)

Plaintiff alleges that Pullen, Goodenough, Cardwell, and Campbell acted pursuant to an "unwritten polic[y] of using an unreasonable amount of force against inmates," a policy that their supervisors "authorize[] and accept[]." (*Id.*) Plaintiff also alleges that Defendants "cover[ed] up" their conduct by "reporting in the misbehavior report that [Plaintiff] took a defensive stance towards Officer Pullen and that [Plaintiff] had attempted to commit suicide." (*Id.*)

On July 6, 2016, "three separate disciplinary hearings were conducted by Lieutenant Penney" and non-defendant C.O. Banse ("Banse") in Plaintiff's absence, numbered 16-0628, 16-0632, and 16-0639. (*Id.*) For the first hearing, number 16-0628, Plaintiff was not "provide[d]

with . . . advance notice of the charges alleged in the inmate misbehavior reports [or] advance notice of the disciplinary hearing." (*Id.*) Plaintiff was also "not given the opportunity to call witnesses on [his] behalf or to present written and/or oral rebuttal evidence." (*Id.*) As a result of the hearing, Plaintiff was "subjected to a total of 90 days keeplock confinement." (*Id.*)[2] With respect to both the first and second hearings, Plaintiff also alleges that he was "not given the opportunity to view the allegations made against me until after the hearings were conducted." (*Id.*) At Plaintiff's third hearing, number 16-0639, Plaintiff was given the opportunity to present "written rebuttal evidence" but had no "advance notice of the charges alleged against [him]" in the Inmate Misbehavior Report ("IMR") relating to the hearing. (*Id.*) In total, Plaintiff was "subjected" to 150 days of "keeplock" as a result of the three hearings. (*Id.*)

B.  Procedural History

Plaintiff filed the original Complaint on January 3, 2017. (*See* Compl. (Dkt. No. 2).) Plaintiff's request to proceed in forma pauperis was granted on February 3, 2017. (*See* Dkt. No. 4.) On September 19, 2017, the case was referred to the Honorable Judge Lisa M. Smith ("Judge Smith") for pre-trial discovery. (*See* Dkt. No. 24.)

On November 8, 2017, Plaintiff filed a proposed First Amended Complaint, which Judge Smith construed as a Motion for Leave To Amend the Complaint, seeking to add new defendants and claims. (*See* Mot. To Amend (Dkt. No. 30).) Defendants filed an opposition to Plaintiff's request to amend. (*See* Dkt. Nos. 32, 33.) On December 22, 2017, Judge Smith issued an order granting in part and denying in part Plaintiff's request to amend. (*See* Decision & Order on Pl.'s

---

[2] Plaintiff indicates that the Inmate Misbehavior Report ("IMR") relating to the first hearing stated that Plaintiff "refused to sign on July 4th 2016 at 5:30 pm," and that in his second hearing, hearing number 16-0632, it stated that he was "unable to sign due to one on one supervision on July 5th 2016 at 5:35 pm." (SAC 3.) It is not clear from the SAC what Plaintiff purportedly refused to sign or how it relates to his claims.

Mot. To Amend ("Order") (Dkt. No. 37).)  Judge Smith denied Plaintiff's Motion with respect to

any claims for deliberate indifference to Plaintiff's medical needs and conditions of confinement,

infringement on his First Amendment right to petition the government for redress, or violations

of the Americans with Disabilities Act, 42 U.S.C. § 12132, on the basis that Plaintiff's

allegations failed to state a claim as to each cause of action.  (*See id.* at 7–17, 23–24.)  Judge

Smith also denied Plaintiff's request to add Kenneth A. Decker, Sgt. Figueroa, Sgt. Hernandez,

Correct Care Solutions, and Ibellis Diaz as parties, as all claims relating to those Defendants

were dismissed.  (*See id.* at 24.)  Judge Smith allowed Plaintiff to replead his due process claim

"to allege the conditions of his confinement imposed as a result of his disciplinary hearing," and

his excessive force claim "to assert the final policymaking authority under state law of

Defendants Campbell and Penney" in order to establish municipal liability under *Monell*.  (*See

id.* at 18–24.)

Plaintiff filed his Second Amended Complaint on February 8, 2018.  (*See* SAC.)  On

February 16, 2018, Defendants filed a letter objecting to Plaintiff's unauthorized addition of

Banse as a defendant in the SAC, and requesting leave to file a motion to dismiss.  (*See* Dkt. No.

43.)  On February 20, 2018, Judge Smith issued an order dismissing Banse from the Action, and

dismissing Plaintiff's claim for supervisory liability from the SAC on the basis that Judge Smith

did not grant "permission for Plaintiff to add a claim for supervisory liability."  (*See* Dkt. No.

45.)

On May 14, 2018, Defendants filed the instant Motion To Dismiss.  (Not. of Mot.; Defs.'

Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 58); Defs.' Decl. in Supp.

of Mot. To Dismiss ("Defs.' Decl.") (Dkt. No. 57).)  After receiving an extension of time to

respond, (*see* Dkt. No. 63), Plaintiff filed an Opposition to the Motion on September 4, 2018.

(Pl.'s Mem. in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 68).) Defendants filed a

Reply on Sept 21, 2018. (Defs.' Reply in Further Supp. of Mot. To Dismiss ("Defs.' Reply")

(Dkt. No. 69).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to

plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense. But where

the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

### B.  Analysis

#### 1.  *Monell* Liability

Defendants move to dismiss Plaintiff's claims against Orange County for failure to plead the existence of a municipal policy, practice, or custom that caused the alleged constitutional violations, as required to establish liability against a municipality under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691.  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability); *see also Ryan v. County of Nassau*, No. 12-CV-5343, 2018 WL

354684, at *3 (E.D.N.Y. Jan. 10, 2018) ("In order for a municipality . . . to be liable for deliberate indifference to medical needs under *Monell* . . . the plaintiff must show that the action that caused the constitutional violation was undertaken pursuant to an official policy." (citation and quotation marks omitted)). Moreover, a plaintiff also must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue."); *see also Simms v. City of New York*, 480 F. App'x. 627, 629 (2d Cir. 2012) ("[T]he plaintiff must 'demonstrate that, through its deliberate conduct, the municipality itself was the moving force behind the alleged injury.'" (quoting *Roe*, 542 F.3d at 37 (alteration omitted))).

Here, Plaintiff expressly seeks to establish *Monell* liability based on a failure to train and supervise theory. "Municipal liability may . . . be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.'" *Okin v. Vill. of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). Only where a plaintiff can demonstrate that a municipality's failure to train "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact" will a policy or custom actionable under § 1983 be established. *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citation and

quotation marks omitted); *see also Connick*, 563 U.S. at 61–62 (same); *City of Canton*, 489 U.S. at 388 (same). The deliberate indifference standard also applies to claims for failure to supervise. *See Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *19 (S.D.N.Y. Mar. 26, 2015) ("In *City of Canton*, the Supreme Court established the 'deliberate indifference' standard in the context of a claim for failure to train, but 'the stringent causation and culpability requirements set out in that case have been applied to a broad range of supervisory liability claims,' including claims for failure to supervise and failure to discipline." (some citations omitted) (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007))). Plaintiff can establish deliberate indifference on a failure to supervise theory "by showing that the need for more or better supervision to protect against constitutional violations was obvious, but that [Orange County] made no meaningful attempt to forestall or prevent the unconstitutional conduct." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) (citation and quotation marks omitted); *see also Tieman*, 2015 WL 1379652, at *19 ("[T]he Supreme Court has held that where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city policy or custom that is actionable under § 1983.'" (some quotation marks omitted) (ultimately quoting *City of Canton*, 489 U.S. at 388)).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). To establish deliberate indifference, a plaintiff must demonstrate that: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice

10

of the sort that training . . . will make less difficult or that there is a history of employees

mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause

the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293,

297–98 (2d Cir. 1992) (quotation marks omitted). "[D]emonstration of deliberate indifference

requires a showing that the official made a conscious choice, and was not merely negligent."

*Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (citations omitted). "A pattern of

similar constitutional violations by untrained employees is ordinarily necessary to demonstrate

deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (citation and

quotation marks omitted). This is because "[w]ithout notice that a course of training is deficient

in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training

program that will cause violations of constitutional rights." *Id.*

     In a section of the SAC titled "Failure To Train And Supervise," Plaintiff alleges that

Emergency Response Team Officers ("E.R.T. Officers"), including Defendants, "are known for

their unwritten policies of using an unreasonable amount of force against inmates, and usually

their supervisors authorize[] and accept[] their conduct by covering up the incidents." (SAC 3.)

In support, Plaintiff alleges that Oriami, Pullen, Goodenough, Cardwell, and Campbell "tried to

cover up" the misconduct alleged here "by reporting in the Misbehavior Report that I took a

defensive stance towards Officer Pullen and that I attempted to commit suicide." (*Id.*) Plaintiff

also cites two prior lawsuits brought in 2003 and 2008 against E.R.T. Officers and Orange

County based on allegations of unreasonable use of force against inmates. (*See id.*) Plaintiff

concludes that since those lawsuits were filed, "Orange County had more than enough

opportunity to properly train the [E.R.T.] Officers in the appropriate way of handling situations

where they might need to use force on an inmate without causing injury." (*Id.*) Defendants

argue that Plaintiff was "specifically given permission to amend the complaint only to replead his excessive force and due process claims 'to assert the final policymaking authority under state law of Defendants Campbell and Penney,'" and that because the SAC "utterly failed to do so," his claims against Orange County fail. (Defs.' Mem. 5 (quoting Order 23).)

The Court agrees that Plaintiff has failed to include any allegations asserting the policymaking authority of Campbell and Penney such that their involvement in the alleged constitutional violations renders Orange County liable under *Monell*. *See Hurley v. Town of Southampton*, No. 17-CV-5543, 2018 WL 3941944, at *21 (E.D.N.Y. Aug. 13, 2018) ("A plaintiff bears the burden of establishing an official's status as a final policymaker with proof of the official's scope of employment and his role within the municipal or corporate organization." (citation and quotation marks omitted)); *Pignone v. Village of Pelham Manor*, No. 10-CV-2589, 2014 WL 929805, at *4 (S.D.N.Y. Mar. 6, 2014) (same). Instead, Plaintiff alleges that the unreasonable use of force by E.R.T. Officers was so pervasive that Orange County was constructively aware of the conduct, including through two prior lawsuits based on similar conduct, specifically *Lahoz v. Orange County Jail*, No. 08-CV-4364, 2010 WL 1789907 (S.D.N.Y. Apr. 29, 2010) and *Jeanty v. County of Orange*, 379 F. Supp. 2d 533 (S.D.N.Y. 2005), and "had more than enough opportunity to properly train" the officers to prevent similar incidents, yet failed to do so. (SAC 3.)

The Second Circuit holds that "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Tieman*, 2015 WL 1379652, at *18 (quoting *Reynolds*, 506 F.3d at 192) (quotation marks omitted)); *see also Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.

1995) ("A § 1983 plaintiff injured by a [municipal] officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its . . . officers, exhibited deliberate indifference."). However, the two lawsuits cited by Plaintiff are insufficient to establish a pattern of unconstitutional activity. To begin, neither resulted in an adjudication of liability. The court in *Lahoz* granted summary judgment in favor of the defendants for failure to exhaust administrative remedies, *see Lahoz*, 2010 WL 1789907, at *3, and Plaintiff makes no allegation that the case was otherwise resolved in a way that suggests Orange County was deemed culpable.[3] "To the extent the complaints . . . were found to be unsubstantiated or were settled without an admission of liability by the [municipality], those complaints do not provide a valid basis for concluding that the [municipality] was deliberately indifferent to [Defendants'] use of excessive force, because they do not, by themselves, establish that [they] used excessive force in the first place." *Alwan v. City of New York*, 311 F. Supp. 3d 570, 584 (E.D.N.Y. 2018). Furthermore, the cases cited by Plaintiff were decided in 2010 and 2005, respectively. Two lawsuits alleging excessive force in a period of over 14 years are insufficient to establish a policy or custom. *See Jones v. Town of East Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (finding that "two instances, or at the most three, over a period of several years in which a small number of officers abused the rights" of citizens "fell far short of showing a policy, custom, or usage"); *see also Greene v. City of New York*, 742 F. App'x 532, 537 (2d Cir. 2018) (finding that "[t]he two prior violations [the plaintiff] cite[d]" to establish deliberate indifference under *Monell* "[were] not enough to sustain his burden" (citing *Jones*, 691 F.3d at

---

[3] Orange County represented that the case was settled without a finding of liability. (Defs.' Mem. 5–6.) However, the Court cannot consider this factual representation at the Motion To Dismiss stage, and must instead "confine its consideration to facts stated on the face of the complaint." *Leonard F.*, 199 F.3d at 107.

85)); *Ortiz v. Parkchester N. Condo.*, No. 16-CV-9646, 2018 WL 2976011, at *6 (S.D.N.Y. June 13, 2018) ("The [complaint's] reference to [14] other lawsuits over the span of nearly two decades involving allegedly similar unlawful conduct without any allegations as to the ultimate disposition of those lawsuits is insufficient to allege a practice so widespread and persistent as to amount to a policy or custom."); *Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) (dismissing *Monell* claims for excessive force based on prior similar lawsuits where "[n]one of the lawsuits cited resulted in an adjudication or admission of liability and the number of suits does not suggest a pervasive illegal practice"), *reversed in part on reconsideration*, No. 14-CV-1082, 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015); *Ameduri v. Village of Frankfort*, 10 F. Supp. 3d 320, 341 (N.D.N.Y. 2014) ("The Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of alleged excessive force is not probative of the existence of an underlying policy by a municipality, police department, or department of corrections." (collecting cases)); *Walker v. City of New York*, No. 12-CV-5902, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (finding that a plaintiff's reliance on ten prior lawsuits, "none resulting in an adjudication of liability," over the span of approximately ten years, "hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim").

Furthermore, even if the prior lawsuits were sufficient to establish a pattern of unconstitutional activity, Plaintiff has not alleged facts demonstrating that the City "consistently failed" to address those prior allegations. *See Tieman*, 2015 WL 1379652, at *21. "A litany of prior lawsuits may suffice to put the [County] on notice that greater training, supervision, or officer discipline was needed, but [P]laintiff makes only conclusory allegations regarding the [County]'s response to the lawsuits." *Falls v. Orange County*, No. 17-CV-1339, 2018 WL

718417, at *4 (S.D.N.Y. Feb. 5, 2018); *see also Harris v. City of Newburgh,* No. 16-CV-2731, 2017 WL 4334141, at *7 (S.D.N.Y. Sept. 27, 2017) (finding the fact that "two [d]efendants . . . have been party to other lawsuits or cited in a complaint . . . does not equate to a consistent failure . . . to investigate those allegations" (citation, alterations, italics, and quotation marks omitted)); *Tieman*, 2015 WL 1379652, at *21 (dismissing *Monell* claims based on failure to train and supervise after similar complaints were filed where the "[p]laintiff does not offer any allegations plausibly establishing that the City failed to investigate the listed complaints of excessive force"). Here, Plaintiff has made only conclusory allegations that Orange County took no action in response to prior lawsuits. Plaintiff appears to presume that Defendants' alleged use of an unreasonable amount of force against him must have resulted from inadequate training. But the mere fact that Defendants allegedly used excessive force does not demonstrate, on its own, that they were inadequately trained. *See Alwan*, 311 F. Supp. 3d at 579 ("Simply alleging that [a defendant] used excessive force against [the] [p]laintiff does not show that [the defendant] received inadequate training about when and how to use force." (citing *Jenkins v. City of New York*, 478 F.3d 76, 95 (2d Cir. 2007))).

Even if Plaintiff had sufficiently alleged that Orange County was aware of unconstitutional conduct by E.R.T. Officers and failed to respond with appropriate training or supervision, Plaintiff does not point to how an absence of training or supervision *caused* the constitutional violations he alleges. *Wheeler v. Wallkill*, No. 16-CV-7441, 2017 WL 2999503, at *5 (S.D.N.Y. July 13, 2017) ("[A] plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury." (citations omitted)). On the contrary, Plaintiff asserts that E.R.T. Officers maintained an unofficial policy of using excessive force on inmates, and that their supervisors actively covered up the

misconduct to prevent discovery. (*See* SAC 3.) Rather than alleging that a lack of training and supervision caused the constitutional violations, Plaintiff suggests that Defendants, none of whom he alleges to have municipal policymaking authority, knowingly acted in violation of formal municipal policy, and then lied in incident reports to evade detection. *See Hurley*, 2018 WL 3941944, at *21 (dismissing deliberate indifference claims against municipality where the plaintiff alleged the individual defendants "acted *intentionally* and with malice," rather than as a result of inadequate training). Accordingly, Plaintiff's claims against Orange County based on deliberate indifference are dismissed.

The SAC also arguably alleges "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware." *Brandon*, 705 F. Supp. 2d at 276–77. For example, Plaintiff asserts that there was an "unofficial policy" to use an unreasonable amount of force against inmates that supervisors were known to "cover up," and that Orange County must have been aware because it was repeatedly sued based on that conduct. (*See* SAC 3.) For the same reasons already discussed, the two lawsuits cited by Plaintiff, which Plaintiff does not allege resulted in a determination of liability, cannot serve as evidence of a widespread and consistent practice. *See Galgano v. County of Putnam*, No. 16-CV-3572, 2018 WL 4757968, at *22 (S.D.N.Y. Sept. 28, 2018) (finding "allegations of two politically motivated prosecutions insufficient to plausibly allege a 'common or prevalent' practice" sufficient to state a claim under *Monell*); *Pryor v. City of New York*, No. 16-CV-8232, 2018 WL 4538904, at *4 (S.D.N.Y. Sept. 21, 2018) ("[R]eference to other cases involving allegedly similar unlawful conduct without any allegations as to the ultimate disposition of those lawsuits is insufficient to allege a practice so widespread and persistent as to amount to a policy or custom of the [municipality]."); *Tieman*,

16

2015 WL 1379652, at *17 (dismissing excessive force claims against municipality under *Monell* where the plaintiff identified prior lawsuits against the city, and noting that "even if the civil complaints involved comparable conduct to that alleged here, none resulted in an adjudication of liability" (citation, alteration, and quotation marks omitted)).  Yet even if they could, three instances of the use of excessive force (the two prior lawsuits and the incident underlying this Action) over a period of over 14 years are insufficient to establish a practice so pervasive that it constitutes a custom or usage.  *See Pryor*, 2018 WL 4538904, at *4 (dismissing *Monell* claims based on the existence of similar prior lawsuits because "[t]hese allegations do not plausibly allege a widespread and persistent practice sufficient to infer a policy or custom for *Monell* liability"); *Nunez v. City of New York*, No. 14-CV-4182, 2016 WL 1322448, at *9 (S.D.N.Y. Mar. 31, 2016), (finding that a "[p]laintiff's identification of approximately two unfavorable decisions per year over a twenty-three-year period fails to support a reasonable inference of a practice . . . 'so consistent and widespread' that it constitutes a 'custom'"), *aff'd*, 735 F. App'x 756 (2d Cir. 2018); *Tieman*, 2015 WL 1379652, at *17 ("[T]he fact that there were allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions of culpability) during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom." (citation omitted)); *Walker*, 2014 WL 1259618, at *3 ("The paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long . . . , hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim."); *Plair v. City of New York*, 789 F. Supp. 2d 459, 466 (S.D.N.Y. 2011) (dismissing *Monell* claim where the plaintiff "point[ed] to two cases of violence that occurred several years prior to the alleged violence against him" on the basis that this does

"not sufficiently allege[] that the violence which harmed him was part of a larger policy or custom").

For these reasons, Plaintiff's claims against Orange County are dismissed.

### 2. Procedural Due Process Claim

Plaintiff alleges that he was subjected to 150 days of "keeplock" status as a result of hearings he was given insufficient prior notice of, that he was not allowed to attend, and at which he was not given an opportunity to present witnesses or evidence in his defense, in violation of his procedural due process rights under the Fourteenth Amendment. "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alterations and quotation marks omitted). The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974) (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment). However, the Supreme Court has clarified that "[p]rison discipline implicates a liberty interest [only] when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Second Circuit has further explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test." *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (citation and quotation marks omitted). The duration of disciplinary confinement, however, is "not the only relevant factor," and the Second Circuit has "explicitly avoided a bright line rule that a certain period of . . . confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citations and quotation

marks omitted).  Indeed, "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement . . . rises to the level of atypical and severe hardship," and, therefore, courts should consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions."  *Id.* (citations and quotation marks omitted); *see also Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." (citation omitted)).

As a guidepost to determine whether due process protections are required in the prison context, the Second Circuit has instructed that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required."  *Palmer*, 364 F.3d at 64–65 (citation and quotation marks omitted); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015) (same).  Indeed, the Second Circuit has cautioned that "[i]n the absence of a detailed factual record, [it has] affirmed dismissal of due process claims only in cases where the period of time spent in [confinement] was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual . . . conditions."  *Palmer*, 364 F.3d at 65–66.

Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken."  *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted).  "In the context of prison

disciplinary hearings, the Second Circuit has said that its 'conception of an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say, with . . . utter certainty . . . , how he would assess evidence he has not yet seen.'" *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL 6028212, at *7 (S.D.N.Y. Dec. 5, 2011) (italics omitted) (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)).

Plaintiff alleges that "three separate disciplinary hearings were conducted by Lieutenant Penney and Correctional Officer Banse" in Plaintiff's absence. (SAC 3.) The SAC appears to address the three hearings, numbered 16-0628, 16-0632, and 16-0639, separately. Regarding the first hearing, 16-0628, Plaintiff states that Penney and Banse "failed to provide [him] with an advance notice of the charges . . . and . . . advance notice of the disciplinary hearing." (*Id.*) Plaintiff also asserts that he "was not given the opportunity to call witnesses on [his] behalf or to present written and/or oral rebuttal evidence." (*Id.*) Plaintiff was subjected to 90 days of "keeplock confinement" as a result of this hearing, but does not explain what conditions "keeplock confinement" entails. (*Id.*) Plaintiff then asserts with respect to the first hearing that an IMR stated he "refused to sign on July 4th, 2016 at 5:30 p.m.," but does not explain what he refused to sign or how it relates to his due process claim. (*Id.*) With respect to hearing 16-0632, Plaintiff states that he "was unable to sign [in] due to one on one supervision on July 5th, 2016 at 5:35 p.m.," but again does not specify what he was unable to sign or how it relates to his claim. (*Id.*) Plaintiff alleges that he "was not given the opportunity to view the allegations made against [him] until after the hearings were conducted." (*Id.*) With respect to hearing 16-0639, Plaintiff asserts that he "was given the opportunity to present written rebuttal evidence," but "was not provided with advance notice of the charges alleged against me in the [IMR]." (*Id.*) Finally,

Plaintiff states that he "was subjected to a total of 150 days keeplock," presumably the combined result of the three hearings. (*Id.*)

Defendants argue that Plaintiff failed to detail the conditions of his confinement imposed as a result of the July 4–6, 2016 disciplinary hearings as compared with the confinement of others in the general inmate population as directed by Judge Smith's Order; instead, Plaintiff "merely sets forth the [keeplock confinement] duration of 150 days." (Defs.' Mem. 7–8; *see also* Order 20.) In response, Plaintiff's Opposition includes a lengthy account of the conditions of confinement imposed based on a deprivation order issued on July 12, 2016, which is attached to his memorandum. (*See generally* Pl.'s Mem.) Plaintiff's Opposition appears to relate to a separate conditions of confinement claim brought in his original Complaint based on the deprivation order, a claim that Judge Smith ruled failed to state a claim and accordingly denied him the right to replead. (*See* Order 13–15, 23–24.) In fact, Judge Smith expressly distinguished Plaintiff's claims based on the deprivation order from those based on the disciplinary hearings. (*See* Order 18 n.18 ("Although Defendants contend that the restrictions imposed as a result of the deprivation order issued to [P]laintiff do not constitute an atypical and significant hardship, Plaintiff does not allege, nor do Defendants contend, that the deprivation order was issued as a result of the disciplinary hearing; consequently, it has no bearing on the question of whether Plaintiff has stated a valid claim for violation of his right to due process in connection with his disciplinary hearing." (citation omitted)).) Plaintiff makes no reference to his keeplock confinement in his Opposition at all, instead focusing on his dismissed conditions of confinement claim based on the deprivation order. (*See* Pl.'s Mem. 4 (arguing that he "set forth that the conditions of my confinement were harsh and excessive, cruel and unusual," and that the

conditions lasted "at least 14 days").)  Thus, the only allegation relating to a condition imposed

as a result of the disciplinary hearings is the 150 days of "keeplock" referenced in the SAC.

In any event, Defendants argue that Plaintiff's due process claim fails as a matter of law

because courts have held that confinement even for periods in excess of 150 days fail to

constitute a constitutional violation for which plaintiffs must receive procedural protections.

(*See* Defs.' Mem. 8.)  The Court disagrees with Defendants' assertion that 150 days of keeplock

confinement cannot implicate a constitutionally-protected liberty interest as a matter of law.

"[E]ven if an inmate is segregated for fewer than 101 days, his liberty interest may still be

implicated if 'the conditions were more severe than the normal punitive segregation conditions

. . . or a more fully developed record showed that even relatively brief confinements under

normal punitive segregation conditions were, in fact, atypical.'"  *Samuels v. Davis*, No. 14-CV-

7204, 2015 WL 4653238, at *2 (S.D.N.Y. July 28, 2015) (alterations omitted) (quoting *Palmer*,

364 F.3d at 65).  As noted, where a plaintiff is confined for a period of "intermediate duration,"

defined as between 101 and 305 days, "development of a detailed record of the conditions of the

confinement relative to ordinary prison conditions is required."  *Palmer*, 364 F.3d at 65 (citation

and quotation marks omitted).  Indeed, in the cases on which Defendants rely, the courts

analyzed the specific conditions of the plaintiffs' disciplinary confinement, and determined that

the conditions did not constitute significant and atypical hardships in comparison to the ordinary

incidents of prison life.  *See Vogelfang v. Capra*, 889 F. Supp. 2d 489, 511 (S.D.N.Y. 2012)

(finding three months of confinement did not trigger due process protections where the plaintiff

"[did] not plead any other facts tending to show that her SHU confinement was uniquely harsh");

*Brooks v. DiFasi*, No. 93-CV-197, 1997 WL 436750, at *4 (W.D.N.Y. July 30, 1997) (finding,

after assessing the specifics of the plaintiff's confinement, that 180 days of keeplock did not

constitute a protected liberty interest where "[t]he regime to which the plaintiff was subjected was well within the range of confinement to be normally expected by one serving several years imprisonment in New York"); *Trice v. Clark*, No. 94-CV-6871, 1996 WL 257578, at *3 (S.D.N.Y. May 16, 1996), (finding 150 days of confinement did not amount to a constitutional violation where "[t]he confinement itself did not exceed similar administrative confinement in either duration or degree of restriction." (citation and quotation marks omitted)), *aff'd*, 131 F.3d 132 (2d Cir. 1997).

However, Plaintiff's due process claim must be dismissed nonetheless because Plaintiff has asserted *no* facts whatsoever that would allow the Court to assess whether the "regime to which [he] was subjected" constituted a significant and atypical hardship compared with ordinary prison conditions. *Brooks*, 1997 WL 436750, at *4; *see also Samuels*, 2015 WL 4653238, at *3 (dismissing due process claim where "the complaint does not allege *any* facts about the conditions [of confinement], including whether they were atypical or unusually harsh"); *Landron v. City of New York*, No. 14-CV-1046, 2014 WL 6433313, at *5 (S.D.N.Y. Nov. 7, 2014) (holding that plaintiff who was held in disciplinary confinement for 18 days but did not indicate "that he endured any unusual conditions during his confinement . . . ha[d] not stated a claim for deprivation of a liberty interest cognizable under [§] 1983"); *Torres v. Logan*, No. 10-CV-6951, 2011 WL 1811003, at *4 (S.D.N.Y. May 11, 2011) (dismissing due process claim based on confinement of "a little over two-thirds" of his 90-day sentence where the plaintiff "fail[ed] to allege any facts regarding the conditions of his confinement, including whether they were abnormal or unusual" (alteration omitted)), *adopted by* 2011 WL 3894386 (S.D.N.Y. June 13, 2011); *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 607 (S.D.N.Y. 2009) (finding that a plaintiff failed to plead "a cognizable liberty interest" based on 280 days of

disciplinary confinement because the plaintiff "failed to make any allegations detailing the conditions of his confinement . . . , and because the duration of his confinement was shorter than confinements that courts in this Circuit have deemed sufficient to impose per se atypical or significant hardship").

However, the Court will dismiss this claim without prejudice. Plaintiff may replead only his procedural due process claims relating to the three disciplinary hearings resulting in 150 days of keeplock confinement, to add specific details of any restrictions placed on his liberty or privileges as compared with typical conditions of prison life. "These conditions may include the percentage of the day that [he must] spend within the cell, hygienic conditions, access to programs, as well as other conditions that may be applicable to [his] situation." *Dawkins*, 646 F. Supp. 2d at 607.

### III.  Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. Plaintiff's claims against Orange County are dismissed with prejudice. Plaintiff's due process claims based on the outcome of his July 2016 disciplinary hearings are dismissed without prejudice, with leave to replead "so that he may provide factual allegations describing the conditions of his [keeplock] confinement . . . that he claims would support a finding of atypical and significant hardship." *Dawkins*, 646 F. Supp. 2d at 607. If Plaintiff wishes to file a third amended complaint repleading his due process claims, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within the third amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the third amended complaint will replace, not supplement, the earlier complaints. The third amended complaint must contain all of the claims against all Defendants. The Court

will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, his due process claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 56), and mail a copy of this Opinion to Plaintiff at the address listed on the docket.

SO ORDERED.

DATED: March 18, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

25