UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAIQUAN K. FALLS,

Plaintiff,

v.

SGT. E. CAMPBELL, C.O. A. PULLEN, C.O.
GOODENOUGH, C.O. CARDWELL, and LT.
PENNEY,

Defendants.

No. 17-CV-35 (KMK)

OPINION & ORDER

Appearances:

Raiquan K. Falls
Elmira, NY
*Pro se Plaintiff*

Kellie E. Lagitch, Esq.
Office of the Orange County Attorney
Goshen, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Raiquan K. Falls ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C.

§ 1983, against Sergeant ("Sgt.") Campbell ("Campbell"), Correction Officer ("C.O.") A. Pullen

("Pullen"), C.O. Goodenough ("Goodenough"), C.O. Cardwell ("Cardwell"), and Lieutenant

Penney ("Penney") (collectively, "Defendants"), alleging that Defendants violated his Eighth

Amendment rights when they assaulted him, and his Fourteenth Amendment rights when they

subsequently placed him on keeplock status for 150 days after a series of disciplinary hearings.

(*See generally* Third Am. Compl. ("TAC") (Dkt. No. 76).)  Before the Court is Defendants'

Partial Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (the "Motion"),

seeking to dismiss Plaintiff's Fourteenth Amendment claim for failure to state a claim.  (*See*

Defs.' Not. of Mot. ("Defs.' Mot.") (Dkt. No. 86).) For the reasons that follow, the Motion is denied.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Third Amended Complaint ("TAC"), and are taken as true for the purpose of resolving the instant Motion. At the time of the events underlying this Action, Plaintiff was a convicted prisoner in the custody of Orange County Jail ("OCJ"). (TAC ¶ 6.)

On July 4, 2016, at approximately 6:00 p.m., Campbell served dinner to inmates housed in the Delta-1 Housing Unit ("Delta-1"), where Plaintiff resided. (*Id.* ¶ 13.) Before serving dinner, Campbell demanded that the inmates "kneel on their beds, face the wall, and place their hands high and flat on the wall at the back end of the cell." (*Id.* ¶ 15.) Instead of serving dinner to Plaintiff, Campbell informed him that he would "starve . . . for the way [Plaintiff] acted toward[] [Campbell's] morning shift officers." (*Id.* ¶ 16.) Campbell served the rest of the inmates, and briefly spoke to C.O. Oriami ("Oriami") before leaving Delta-1. (*Id.* ¶¶ 18–19.)

Approximately 30 minutes later, Plaintiff asked Oriami to order dinner for him, but Oriami replied that "it would be up to Sergeant Campbell," and continued on his rounds. (*Id.* ¶¶ 21–22.) After Oriami completed his rounds, he returned to Plaintiff's cell. (*Id.* ¶ 23.) Plaintiff asked Oriami to contact "Mental Health Personnel," and stated, "I prefer taking my own life before I allow y'all to starve me to death." (*Id.* ¶ 24.) Plaintiff also told Oriami that Campbell had been "unprofessional," and that he hoped Mental Health Personnel could persuade Oriami or Campbell to order a dinner tray for Plaintiff "and change the way [he] was feeling at the moment." (*Id.* ¶ 25.)

In response, Oriami "immediately reported an inmate attempting to commit suicide over his radio." (*Id.* ¶ 26.) "Within [a] matter of seconds," Campbell, Pullen, Goodenough, and Cardwell entered Plaintiff's cell "without any provocation." (*Id.* ¶ 27.) Pullen "forcefully threw his body into [Plaintiff] head on," causing Plaintiff's back to "crash into the wall . . . with full force, and thereafter body slammed [Plaintiff] to the floor on [his] face/head." (*Id.* ¶ 28.) Pullen held Plaintiff down while Goodenough and Cardwell "twisted both [Plaintiff's] arms and legs[,] nearly breaking them, before securing them with hand and leg restraints." (*Id.* ¶ 29 (quotation marks omitted).) As this happened, Plaintiff alleges that he did "not resist[] in any way." (*Id.*) Then, Goodenough and Cardwell "overtightened [] [Plaintiff's] hand and leg restraints," and "joined Pullen in dropping their knees on [Plaintiff's] back and ribs." (*Id.* ¶ 30.) Plaintiff yelled at them to "get off [his] back," and said, "I can't breathe." (*Id.* ¶ 31 (quotation marks omitted).) At that point, Pullen covered Plaintiff's mouth and nose "for about 10 seconds," while Pullen continued to "knee [Plaintiff] in [his] back and [] ribs. (*Id.* ¶ 32.) As these events transpired, Campbell stood at the door to Plaintiff's cell. (*Id.* ¶ 33.) Thereafter, Campbell entered the cell and "began kicking and punching [Plaintiff] in [his] face and ribs a few times in [] rapid succession for about [five] seconds," and then ordered Pullen, Goodenough, and Cardwell to take Plaintiff to OCJ's Medical Department. (*Id.* ¶¶ 33–34.) According to Plaintiff, an OCJ employee named "Worsdale" began to record the incident on a "hand held video camera" as Plaintiff was leaving his cell. (*Id.* ¶ 35.) Plaintiff was transferred from OCJ's Medical Department to Orange Regional Medical Center, where he was diagnosed with a fractured back and "intermittent explosive disorder." (*Id.* ¶¶ 36–37.) Plaintiff was instructed to see a psychiatrist within one day and a medical doctor within two days for a follow-up appointment and re-evaluation. (*Id.* ¶ 38.)

On July 5, 2016, Plaintiff was discharged from Orange Regional Medical Center. (*Id.* ¶ 39.) Upon his return to OCJ, Plaintiff was placed on suicide watch "pursuant to the doctor's order." (*Id.* ¶ 40.) Plaintiff informed a psychiatrist and Mental Health Personnel that Defendants' allegations of Plaintiff's attempted suicide were "false and fabricated," with the intention of "justify[ing] their entry inside [Plaintiff's] cell." (*Id.* ¶¶ 40, 42.) Plaintiff also alleges that Defendants falsely reported that he "jumped up towards them in a[n] aggressive manner with clenched fists in order to justify their use of physical force." (*Id.* ¶ 40.) On July 6, 2016, Plaintiff was taken off suicide watch, and personal possessions, such as his jumpsuit, bedding, and legal documents, were returned to him. (*Id.* ¶ 42.)

On July 6, 2016, between approximately 6:00 p.m. and 7:00 p.m., "[three] separate disciplinary hearings" were conducted in Plaintiff's absence. (*Id.* ¶ 43.) The first, second, and third disciplinary hearings were numbered 16-0628, 16-0632, and 16-0639, respectively. (*Id.* ¶ 62.) Plaintiff was allegedly "not given [] advance written notice of the charges against [him], and was not given a[] reasonable opportunity to call witnesses or present documentary/written evidence in [Plaintiff's] defense." (*Id.* ¶ 43.)[1] At each disciplinary hearing, Penney "stated into the record . . . that the disciplinary hearings [would] be held in absentia due to [Plaintiff's] ongoing non-compliant activity," because Plaintiff had covered his cell window "and was yelling obscenities at the time of the disciplinary hearing." (*Id.* ¶ 45.) Plaintiff was subjected to 30 days of keeplock confinement for the first hearing, and 60 days of keeplock confinement for each of the second and third hearings. (*Id.* ¶ 62.) Thus, Plaintiff was subjected to a total of 150 days of

---

[1] Plaintiff indicates that non-defendant C.O. Banse entered his cell at 6:00 p.m. on July 6 to ask him to write down "in detail what [] transpired on July 4, 2016." (TAC ¶ 44.) Because two incidents took place on July 4, Plaintiff "took it as an opportunity to grieve" the event that occurred at 6:16 p.m. (*Id.*) It is not clear from the TAC what these descriptions were for and how they are related to Plaintiff's claims.

keeplock, in addition to loss of telephone and commissary privileges for 150 days, and a $75 mandatory surcharge. (*Id.* ¶¶ 47, 62.) As a result of the second disciplinary hearing, the "security slot in [Plaintiff's] cell door" was also restricted from being opened "for any purpose other [than] [] meals, issuance of hygiene items, and other security[-]related purposes for the duration of [the] sanctions." (*Id.* ¶ 48.) In order to open the security slot, the Delta-1 Housing Officer was required to obtain permission from a Delta-1 Sergeant or higher rank, which delayed the serving of Plaintiff's meals and his participation in "out-of-cell activities [he] was entitled to attend." (*Id.* ¶ 49.) Plaintiff alleges that "most of the time, due to the [Delta-1] Sergeant's unavailability[,]" he was denied "out-of-cell activities" including "showers, rec[reation], sick call appointments, [and] visits." (*Id.*)

On August 31, 2016, Plaintiff was committed to Mid-Hudson Psychiatric Center and diagnosed with a personality disorder. (*Id.* ¶ 62.)

### B. Procedural History

Plaintiff filed the original Complaint on January 3, 2017. (*See* Compl. (Dkt. No. 2).) Plaintiff's request to proceed in forma pauperis was granted on February 3, 2017. (*See* Dkt. No. 4.) On September 19, 2017, the case was referred to the Honorable Magistrate Judge Lisa M. Smith ("Judge Smith") for pre-trial discovery. (*See* Dkt. No. 24.)

On November 8, 2017, Plaintiff filed a proposed First Amended Complaint ("FAC"), which Judge Smith construed as a Motion To Amend, seeking to add new defendants and claims. (*See* Mot. To Amend (Dkt. No. 30).) Defendants filed an Opposition to Plaintiff's Motion To Amend. (*See* Dkt. Nos. 32, 33.) On December 22, 2017, Judge Smith issued an Order granting in part and denying in part Plaintiff's Motion. (*See* Decision & Order on Pl.'s Mot. To Amend ("Order") (Dkt. No. 37).) Judge Smith denied Plaintiff's Motion To Amend with respect to any

claims for deliberate indifference to Plaintiff's medical needs and conditions of confinement, infringement on Plaintiff's First Amendment right to petition the government for redress, or violations of the Americans with Disabilities Act, 42 U.S.C. § 12132, on the basis that Plaintiff's allegations failed to state a claim.  (*See id.* at 7–17, 23–24.)  Judge Smith also denied Plaintiff's request to add Kenneth A. Decker, Sgt. Figueroa, Sgt. Hernandez, Correct Care Solutions, and Ibellis Diaz as parties.  (*See id.* at 24.)  Judge Smith allowed Plaintiff to replead his due process claim "to allege the conditions of his confinement imposed as a result of his disciplinary hearing," and his excessive force claim "to assert the final policymaking authority under state law of Defendants Campbell and Penney" in order to establish municipal liability under *Monell*. (*See id.* at 24.)

Plaintiff filed his Second Amended Complaint ("SAC") on February 8, 2018.  (*See generally* SAC (Dkt. No. 42).)  On February 16, 2018, Defendants filed a letter objecting to Plaintiff's unauthorized addition of C.O. Banse ("Banse") as a defendant in the SAC, and requesting leave to file a motion to dismiss.  (*See* Dkt. No. 43.)  On February 20, 2018, Judge Smith issued an Order dismissing Banse from the Action, and dismissing Plaintiff's claim for supervisory liability from the SAC on the basis that Judge Smith "did not grant[] permission for Plaintiff to add a claim for supervisory liability."  (*See* Dkt. No. 45.)

On May 14, 2018, Defendants filed a Partial Motion To Dismiss, seeking to dismiss Plaintiff's claims against Orange County for failure to sufficiently plead municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and Plaintiff's Fourteenth Amendment claim for failure to state a claim.  (*See* Defs.' Mot. (Dkt. No. 56).)  Plaintiff filed an Opposition to the Motion on September 4, 2018, (Pl.'s Mem. in Opp'n to Defs.' Mot. To Dismiss

(Dkt. No. 68)), and Defendants filed a Reply on September 21, 2018, (Defs.' Reply in Further Supp. of Mot. To Dismiss (Dkt. No. 69)).

On March 19, 2019, the Court granted Defendants' Motion To Dismiss. (March 9, 2019 Op. & Order on Defs.' Mot. To Dismiss ("Op.") (Dkt. No. 74).) The Court dismissed Plaintiff's claims against Orange County with prejudice, (*id.* at 18), but granted Plaintiff leave to replead his Fourteenth Amendment claim within 30 days of the Opinion and Order ("Opinion"), (*id.* at 24). The Court instructed Plaintiff that he may "replead *only* his procedural due process claims relating to the three disciplinary hearings resulting in 150 days of keeplock confinement, to add specific details of any restrictions placed on his liberty or privileges as compared with typical conditions of prison life." (*Id.* (emphasis added).) The Court further clarified, "[t]hese conditions may include percentage of the day that [Plaintiff must] spend within the cell, hygienic conditions, access to programs, as well as other conditions that may be applicable to his situation." (*Id.* (alterations omitted) (quoting *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 607 (S.D.N.Y. 2009).)

On April 16, 2019, Plaintiff filed his TAC. Defendants filed the instant Motion To Dismiss on June 13, 2019. (Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 88); Defs.' Decl. in Supp. of Mot. To Dismiss ("Defs.' Decl.") (Dkt. No. 87).) After receiving an extension of time to respond, (*see* Dkt. No. 91), Plaintiff filed an Opposition to the Motion on July 11, 2019, (Pl.'s Mem. in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 95)). Defendants filed a Reply on August 23, 2019. (Defs.' Reply in Further Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 97).)

## II. Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-

pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the

complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

### B. Analysis

#### 1. Applicable Law

Plaintiff alleges that he was subjected to 150 days of keeplock in violation of his procedural due process rights under the Fourteenth Amendment. This confinement was the result of three hearings for which Plaintiff was allegedly given insufficient prior notice, and at which he was not given an opportunity to attend or present witnesses or evidence in his defense. "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation, alteration, and quotation marks omitted). The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974) (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment). However, the Supreme Court has clarified that "[p]rison discipline implicates a liberty interest [only] when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515

U.S. 472, 484 (1995)). The Second Circuit has further explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test." *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (citation and quotation marks omitted). The duration of disciplinary confinement, however, is "not the only relevant factor," and the Second Circuit has "explicitly avoided a bright line rule that a certain period of . . . confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citations and quotation marks omitted). Indeed, "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement . . . rises to the level of atypical and severe hardship," and, therefore, courts should consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions." *Id.* (citations and quotation marks omitted); *see also Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." (citation omitted)).

As a guidepost to determine whether due process protections are required in the prison context, the Second Circuit has instructed that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64–65 (citation and quotation marks omitted); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015) (same). Indeed, the Second Circuit has cautioned that, "[i]n the absence of a detailed factual record, [it has] affirmed dismissal of due process claims only in cases where the period of time spent in [confinement] was

exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual . . . conditions." *Palmer*, 364 F.3d at 65–66.

A disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted). "In the context of prison disciplinary hearings, the Second Circuit has said that its 'conception of an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say, with . . . utter certainty . . . , how he would assess evidence he has not yet seen.'" *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL 6028212, at *7 (S.D.N.Y. Dec. 5, 2011) (italics omitted) (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)).

### 2. Application

#### a. Keeplock Confinement

Plaintiff alleges that "three separate disciplinary hearings" were conducted by Penney in Plaintiff's absence on July 6, 2016. (TAC ¶¶ 43, 45.)[2] Plaintiff was subjected to 30 days of keeplock as a result of the first hearing, 60 days of keeplock as a result of the second hearing,

---

[2] The Court notes that Plaintiff's SAC addressed these hearings separately and provided more detail on each. Regarding the first hearing, Plaintiff stated that Penney and Banse "failed to provide [him] with an advance notice of the charges . . . and . . . advance notice of the disciplinary hearing." (SAC 3.) Plaintiff also asserted that he "was not given the opportunity to call witnesses on [his] behalf or to present written and/or oral rebuttal evidence on [his] behalf." (*Id.*) With respect to the second hearing, Plaintiff alleged that he "was not given the opportunity to view the allegations made against [him] until after the hearings were conducted." (*Id.*) With respect to the third hearing, Plaintiff asserted that he "was given the opportunity to present written rebuttal evidence," but "was not provided with advance notice of the charges alleged against [him]." (*Id.*)

and another 60 days of keeplock as a result of the third hearing. (*Id.* ¶ 62.) Plaintiff also lost telephone and commissary privileges for 150 days, was charged $75 in mandatory surcharge fees, and the security slot in his cell door could be opened only "for meals, issuance of hygiene items, and other security[-]related purposes" during his keeplock confinement. (*Id.* ¶¶ 48, 62.) According to Plaintiff, this was an "atypical and significant hardship . . . because the assigned Housing Unit Officer had to get an approval from the Delta Wing Sergeant or higher rank before opening [the] security slot, . . . [which] prolonged the serving of [] meals and out-of-cell activities [Plaintiff] was entitled to attend." (*Id.* ¶ 49.) Plaintiff avers that "most of the time, due to the Delta Wing Sergeant's unavailability, [Plaintiff] would be denied of [his] out-of-cell activities [such as] showers, rec[reation], sick call appointments, [and] visits." (*Id.*)[3]

As an initial matter, the Court considers Plaintiff's 150 days of keeplock confinement as an aggregated sentence. "[S]eparate SHU sentences should be aggregated for purposes of the *Sandin* inquiry when they constitute a sustained period of confinement." *Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001) (citation and quotation marks omitted); *see also Sealey*, 197 F.3d at 587 (requiring district court to aggregate sanctions that caused inmate to serve consecutive time in segregation). "Generally, it appears from Second Circuit decisions that separate SHU

---

[3] The account in Plaintiff's Memorandum differs slightly from the facts set forth here, as Plaintiff states that "[d]uring part of [his] keeplock confinement, Plaintiff was deprived of *all* out-of-cell activities, [i.e.], showers, recreation, sick call appointments, visits, etc." (Pl.'s Mem. 2 (emphasis added).) The Court's previous Order made clear, however, that the Court "[would] not consider factual allegations contained in . . . memoranda." (Op. 24–25.) Additionally, while the Court is able to consider "materials outside the complaint," such as opposition papers, the Court can do so "only to the extent that they are consistent with allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted); *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010). Therefore, the Court will not consider Plaintiff's allegation that he was denied "all out-of-cell activities." (Pl.'s Mem. 2.)

sentences constitute a sustained period of confinement [that may be aggregated] when (1) they are contiguous and (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Taylor v. Artus*, No. 05-CV-271, 2007 WL 4555932, at *8 & n.40 (N.D.N.Y. Dec. 19, 2007) (citation, quotation marks, and alteration omitted). Plaintiff alleges that he was "subjected to 150 days of keeplock confinement," (TAC ¶ 47), which Defendants do not dispute, and this confinement was imposed by Perrey as the result of three disciplinary hearings that took place consecutively on the same date.[4] The Court therefore considers Plaintiff's keeplock confinement to be an aggregated sentence of "intermediate duration." *Palmer*, 364 F.3d at 64–65.

Defendants contend that Plaintiff fails to allege a liberty interest under *Sandin*, arguing that loss of commissary and telephone privileges, the restrictions on Defendant's security slot, and the $75 disciplinary surcharge cannot constitute an "atypical and significant hardship." (Defs.' Mem. 8–10.) With respect to these allegations, the Court agrees. "Denial of [commissary and telephone] privileges is part and parcel of 'normal' SHU or keeplock conditions." *Aikens v. Royce*, No. 14-CV-663, 2016 WL 5720792, at *5 n.9 (S.D.N.Y. Sept. 30, 2016); *see also Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at *7 (S.D.N.Y. Mar. 13, 2018) ("[The] [p]laintiff was [] subjected solely to the loss of privileges such as access to the phones, packages, and commissary . . . . [which] do not constitute an atypical and significant hardship.") (citation and quotation marks omitted); *Branch v. Goord*, 05-CV-6495, 2006 WL 2807168, at *4 (S.D.N.Y. Sept. 28, 2006) ("[L]ost privileges do not constitute an atypical and

---

[4] Discovery may reveal more detail on the length of Plaintiff's keeplock confinement and whether the three sentences were served consecutively, as Plaintiff's TAC does not include the dates of his actual keeplock confinement, and Defendants do not provide clarity on this point.

significant hardship because they are within the expected parameters of the sentence imposed by a court of law." (citation and quotation marks omitted)); *Brooks v. DiFasi*, No. 93-CV-0197, 1997 WL 436750, at *3 (W.D.N.Y. July 30, 1997) (finding that the loss of privileges such as recreation, commissary, and telephone "could [not] reasonably be viewed as imposing atypical and significant hardship on a prison inmate" (collecting cases)). The restrictions placed on Plaintiff's security slot also do not rise to the level of an atypical and significant hardship. *Palmer*, 364 F.3d at 66 ("The atypical and significant hardship th[e] plaintiff suffered . . . was being *deprived*[,] [not delayed in receiving,] . . . hygienic products and materials, . . . [and] personal food . . . ." (citation and alteration omitted) (emphasis added)); *Houston v. Cotter*, 7 F. Supp. 3d 283, 300 (E.D.N.Y. 2014) (finding that a lack, and not a delay, of food could constitute an atypical and significant hardship). With respect to his security slot, Plaintiff alleges that he was merely delayed in, and not prohibited from, receiving some of his meals and from attending events. (TAC ¶ 49.) Standing alone, these restrictions do not rise to the level of an "atypical and significant hardship."[5]

However, Plaintiff also alleges that while in keeplock confinement, he was "denied out-of-cell activities," such as recreation, showers, sick call appointments, and visits "most of the time, due to the Delta Wing Sergeant's unavailability," (*id.*), a claim which Defendants do not specifically address. While Plaintiff does not elaborate on the extent to which he was prevented

---

[5] The $75 disciplinary surcharge imposed on Plaintiff is permissible under New York State regulations. N.Y. Comp. Codes R. & Regs. tit. 9, § 7006.9(c) (2019) ("If an inmate is found guilty of a charge of misbehavior, a disciplinary surcharge not to exceed $25 may be imposed upon the inmate in addition to the sanctions . . . ."). Plaintiff was presumably charged $25 for each of the three disciplinary hearings at issue. This surcharge does not "implicate a liberty interest," as it is neither atypical nor significant "in relation to the ordinary incidents of prison life." *Ortiz*, 380 F.3d at 654 (quoting *Sandin*, 515 U.S. at 484).

from participating in these activities, it is plausible that if he were denied some of these activities "most of the time" during a 150-day keeplock confinement, those restrictions may rise to the level of an atypical and significant hardship in comparison to the general prison population. For example, denial of showers, visits, and sick call appointments may constitute a constitutional violation, depending on the factual circumstances. *See, e.g.*, *Ortiz*, 380 F.3d at 655 (allegations that the plaintiff was prevented from showering for weeks at a time and denied an hour of daily exercise during a 90-day confinement, "if proved, [] could establish conditions in SHU far inferior to those prevailing in the prison in general" (citation and quotation marks omitted)); *James v. Gage*, No. 15-CV-106, 2018 WL 2694436, at *15 (S.D.N.Y. June 5, 2018) (denying defendant's motion to dismiss when the plaintiff alleged he had been refused, inter alia, pain medication); *Tolliver v. Skinner*, No. 12-CV-971, 2017 WL 1017649, at *3 n.3 (S.D.N.Y. Mar. 13, 2017) ("Certainly, the [intermediate-length] period of confinement combined with the loss of visitation privileges could constitute conditions atypical and significant enough to form a cognizable liberty interest."); *Hill v. Laird*, No. 06-CV-0126, 2016 WL 3248332, at *10 (E.D.N.Y. June 13, 2016) ("The Court's determination as to whether the denial of visitation [for 150 days] constitutes an atypical [and] significant hardship sufficient to implicate a liberty interest under *Sandin* is fact-specific." (citation and quotation marks omitted)); *Houston*, 7 F. Supp. 3d at 300 (finding that lack of food or medication could constitute an atypical and significant hardship).[6]

---

[6] Courts in the Second Circuit have regularly determined that loss of recreation may not amount to an atypical and significant hardship. *See, e.g.*, *Keyes v. Annucci*, No. 18-CV-0372, 2019 WL 4602240, at *13 (N.D.N.Y. Sept. 23, 2019) (finding that the plaintiff did not suffer an atypical and significant hardship when he received only an hour of recreation a day during his 60-day keeplock confinement); *Husbands v. McClellan*, 990 F. Supp. 214, 217 (W.D.N.Y. 1998) (finding the temporary loss of phone, package, commissary, and recreation privileges during a 180-day SHU confinement did not amount to an atypical and significant deprivation (citing

While Plaintiff's TAC is far from detailed, given the intermediate length of Plaintiff's confinement and the "indication that [] [P]laintiff [may have] endured unusual [keeplock] conditions," *Palmer*, 364 F.3d at 65–66, "development of a detailed record . . . is advisable before the Court will dismiss the claim for failure to plead a protected liberty interest," *Abdur-Raheem*, 2015 WL 667528, at *5; *see also Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *22 (S.D.N.Y. Sept. 26, 2019) ("Because [the] [p]laintiff has plausibly alleged that he possessed a liberty interest . . . the Court declines to dismiss [the] [p]laintiff's due process claim . . . ." (citation and quotation marks omitted)); *Koehl v. Bernstein*, No. 10-CV-3808, 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (concluding that allegations of 120 days in restrictive housing required discovery and development of record to determine "whether this intermediate sentence constituted an atypical and significant hardship" (citation omitted)), *adopted by* 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011); *cf. Brooks*, 1997 WL 436750, at *4 (holding, on motion for summary judgment and a detailed factual record, that "the plaintiff has failed to factually establish a genuine issue as to whether the conditions of confinement he experienced during the 180 days of keeplock confinement created significant and atypical hardship in comparison to the ordinary incidents of prison life"). Thus, the Court concludes that Plaintiff has, even if barely, alleged enough facts to plausibly state a claim to a liberty interest. Of course, a full record may challenge the strength of the evidence of such a claim, but that day must await the completion of discovery.[7]

---

*Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996); *Brooks*, 1997 WL 436750, at *3)). Here, the Court concludes it is necessary to develop a further factual record on the type and frequency of recreation denied to Plaintiff before ruling on this issue.

[7] Despite the Court's direction that Plaintiff use the opportunity to file a TAC solely to provide further detail on the conditions of his 150-day keeplock confinement, Plaintiff's TAC also includes facts related to the conditions of his confinement imposed by various deprivation

b.  Disciplinary Hearings

To survive Defendants' Motion, Plaintiff must also allege that his keeplock confinement was imposed without due process.  Plaintiff claims he did not receive advance notice of the charges against him for any of the three disciplinary hearings, and, at least for the first hearing, "was not given [a] reasonable opportunity to call witnesses or present documentary/written rebuttal evidence in [his] defense."  (TAC ¶ 43.)[8]  Plaintiff also states that the hearings were held in his absence, and he did not "knowingly waive [his] right to be present at the disciplinary hearings."  (*Id.* ¶ 46.)

Plaintiff's allegation that he did not receive advance notice of the charges against him is sufficient to sustain his claim at this stage.  Due process requires "that a prisoner receive 24 hours advance notice of a prisoner disciplinary hearing."  *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 511 (S.D.N.Y. 2012) (citing *Sira v. Morton*, 380 F.3d 57, 70 (2d Cir. 2004)).  The notice must be written "in order to inform [the inmate] of the charges and to enable him to marshal the

---

orders and "other determinations also made without due process."  (*See* TAC ¶¶ 41, 50–60, 63.) As stated in this Court's previous Opinion, some of these facts "appear to relate to a separate conditions of confinement claim brought in [Plaintiff's] original Complaint . . . , a claim that Judge Smith ruled failed to state a claim and accordingly denied [Plaintiff] the right to replead," (Op. 21), while other facts relate to an access to courts claim, for which Judge Smith also denied Plaintiff the right to replead, (Order 15–16).  Additionally, "Plaintiff does not allege, nor do Defendants contend, that the deprivation order[s] were issued as a result of the disciplinary hearing," (*id.* at 21 (citation and quotation marks omitted)); therefore, these facts "ha[ve] no bearing on the question of whether Plaintiff has stated a valid claim for violation of his right to due process in connection with his disciplinary hearing," (*id.*), and the Court will not consider them here.

[8] While Plaintiff's TAC states broadly, "[O]n the [sixth] day of July[,] 2016[,] . . . [I] was not given a reasonable opportunity to call witnesses or present documentary/written rebuttal evidence in my defense," (TAC ¶ 43), Plaintiff's SAC stated that with respect to the first hearing, he "was not given the opportunity to call witnesses on [his] behalf or to present written and/or oral rebuttal evidence," but for the third, he "was given the opportunity to present written rebuttal evidence," (SAC 3).

facts and prepare a defense." *Wolff*, 418 U.S. at 564. Plaintiff's claim that he did not receive written notice of the charges against him 24 hours before the disciplinary hearing must be taken as true. Thus, this claim cannot be dismissed at this stage.[9]

Plaintiff further alleges that he was not permitted to attend the disciplinary hearings, nor was he allowed to call witnesses or present written testimony for at least one, if not more, of the hearings. "Ordinarily, an inmate facing disciplinary hearings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Holland v. Goord*, 758 F.3d 215, 224–25 (2d Cir. 2014) (quoting *Wolff*, 418 U.S. at 566). "The right to call witnesses is limited in the prison context, however, 'by the penological need to provide swift discipline in individual cases' and 'by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff.'" *Id.* at 225 (quoting *Ponte v. Real*, 471 U.S. 491, 495 (1985)). Accordingly, "prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or

---

[9] Defendants do not address Plaintiff's claims about the process he was afforded during the disciplinary hearings, instead arguing that Plaintiff had sufficient recourse to appeal the ruling after the hearings. (Defs.' Mem. 10–11.) Although this may be true, inmates must be provided with certain procedural due process rights before and during the disciplinary hearing itself. *See Wolff*, 418 U.S. at 563–66 (finding that, "if the minimum requirements of procedural due process are to be satisfied," inmates must receive "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken," and "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"); *Lewis v. Murphy*, No. 12-CV-268, 2014 WL 3729362, at *10 (N.D.N.Y. July 25, 2014) (noting that prisoners are "entitled to advance written notice of the charges against [them]; a hearing affording [them] a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer and a written statement of the disposition[,] including the evidence relied upon and the reasons for the disciplinary actions taken." (quoting *Sira*, 380 F.3d at 69)); *Vogelfang*, 889 F. Supp. 2d at 511–12 (same).

undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* (citation, alteration, and quotation marks omitted). Moreover, the Second Circuit has "stated that the Supreme Court . . . has suggested that a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity." *Id.* (alterations and quotation marks omitted) (quoting *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30–31 (2d Cir. 1991)). Here, Plaintiff does not elaborate on the circumstances surrounding his inability to call witnesses or present documentary evidence, other than to claim that Penney stated into the record at the hearing that Plaintiff could not attend because his "cell window [was] covered[,] and [he] was yelling obscenities at the time of the disciplinary hearing." (TAC ¶ 45.) Defendants do not address these allegations. Although it is possible that Plaintiff's conduct could have been "unduly hazardous to institutional safety or correctional goals," *Holland*, 758 F.3d at 224–25 (citation and quotation marks omitted), it is also plausible that his inability to call witnesses or present documentary evidence may amount to a due process violation. Thus, Defendant's Motion To Dismiss is denied.

## III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is denied.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 86), and mail a copy of this Opinion to Plaintiff at the address listed on the docket. The Court will hold an initial conference to set a schedule for discovery on January 8, 2020 at 10:00 a.m.

SO ORDERED.

DATED:     November 21 , 2019
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE